(No. 46085.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. VERNON LEE PATTON, JR., Appellee.

*Opinion filed March 29, 1974.*

William J. Scott, Attorney General, of Springfield, and James R. Burgess, Jr., State's Attorney, of Urbana (James B. Zagel and John F. Podliska, Assistant Attorneys General, of counsel), for the People.

Richard T. West, of Webber, Balbach, Thies & Follmer, of Urbana, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Vernon Lee Patton, Jr., was charged with ticket scalping in violation of section 1½ of "An Act in relation to the sale of tickets to certain places of entertainment or amusement." (Approved June 30, 1923; as amended July 5, 1935.) This act is commonly referred to as the "Ticket Scalping Act." (Ill. Rev. Stat. 1971, ch. 121½, par. 157.32.) It was alleged that the defendant resold two tickets to a concert at the University of Illinois Assembly Hall at a price greater than the amount of the price upon the face of the tickets. On the defendant's motion the circuit court of Champaign County dismissed the complaint, holding the statute unconstitutional. The State appealed directly to this court. 50 Ill.2d R. 302(a).

At the time of the alleged offense, section 1½ of the Act made it unlawful to sell tickets for any amusement for a price greater than the price printed on the face of the ticket and section 2 of the Act provided a mandatory $5,000 fine for violation of section 1½ of the Act. (Ill. Rev. Stat. 1971, ch. 121½, par. 157.32 and par. 157.33.)

On January 1, 1973, five days after this complaint was dismissed, an amendment to section 2 became effective which replaced the mandatory $5,000-fine provision with a provision authorizing any fine not exceeding $5,000. The respondent argues that the statute in effect at the time of the alleged offense provided for an arbitrary and capricious penalty and was violative of article I, section 11 of the 1970 Illinois Constitution and the eighth amendment of the Federal Constitution. He also contends that the statute violates the due process clause of the Illinois Constitution (art. I, sec. 2) and the due process clause of the fourteenth amendment to the Federal Constitution, contending that the State has no legitimate interest in regulating the resale price of tickets to amusement events. The State contends that the Act is a valid exercise of legislative authority.

In *People v. Steele* (1907), 231 Ill. 340, this court considered an earlier statute concerning the same subject. In that case the defendants were convicted of violations of an act approved June 4, 1907, "to prohibit the sale of tickets for more than the price printed thereon ***" (Laws of 1907, p. 269). The statute required that the ticket have printed thereon "This ticket cannot be resold for more than the price printed hereon" and prohibited the sale of the ticket for a price in excess of the advertised or printed rate therefor. The court held these restrictions to be arbitrary and unreasonable interferences with the rights of the individuals concerned and that the Act could not be justified as a police regulation and was not within the power of the legislature to enact. The court found that the Act constituted a violation of the due process clause of the Illinois Constitution (Ill. Const. (1870), art. II, sec. 2). In 1923 the legislature again passed an act regulating the sale of tickets to various amusement events. (Laws of 1923, p. 322.) In 1935, the Act was amended by adding the present section 1½, which prohibits the sale of amusement tickets at a price higher than the price printed upon the face of the ticket. The 1935 amendment is

virtually identical to the provision which this court held invalid in *Steele*.

In 1926 the United States Supreme Court had occasion to consider the provisions of a New York statute which prohibited the resale of any ticket of admission to theaters or places of entertainment "at a price in excess of 50 cents in advance of the price printed on the face of such ticket or other evidence of the right of entry." The court held that the regulation was in violation of the due process clause of the fourteenth amendment to the Federal Constitution. In support of its position, the court referred to *People v. Steele*. (*Tyson & Brother v. Banton* (1927), 273 U.S. 418, 71 L. Ed. 718, 47 S. Ct. 426.) In both *Tyson* and *Steele* the courts sought to tie the State's right to regulate the resale price of tickets to the "affected with a public interest" concept, and, being unable to find that the sale of amusement tickets was a business affected with a public interest, the courts concluded that the States did not have the authority to regulate the resale price.

In *Nebbia v. New York* (1934), 291 U.S. 502, 78 L. Ed. 940, 54 S. Ct. 505, the court concluded that the phrase "affected with a public interest" is not susceptible of definition and forms an unsatisfactory test of the constitutionality of legislation directed at business practices or prices. The court stated: "If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied *** " 291 U.S. at 537, 78 L. Ed. at 957.

In *Gold v. DiCarlo* (1964), 235 F. Supp. 817, a three-judge panel sitting in the District Court for the Southern District of New York again considered a New York statute which made it unlawful to resell a ticket to a public amusement event at a price of more than $1.50 plus lawful taxes in excess of the maximum price printed on the ticket. The court held that the Supreme Court's previous holding in *Tyson* that the State lacked power to regulate the resale prices of such tickets was not a barrier

to the reconsideration of this question by the three-judge district court. The court found that the *Tyson* fictional test had been rejected in *Nebbia* and applied the *Nebbia* due process test by stating, "The test of constitutionality is whether the method of regulation embodied in the statute bears a rational relation to a constitutionally permissible objective." (235 F. Supp. at 820.) The court stated that in applying the fourteenth amendment it must simply determine whether circumstances vindicate the challenged statute as a reasonable exercise of governmental authority or condemn it as arbitrary or discriminatory. The court held that the New York statute was valid. This decision was affirmed in a *per curiam* opinion by the Supreme Court in *Gold v. DiCarlo* (1965), 380 U.S. 520, 14 L. Ed. 2d 266, 85 S. Ct. 1332. Thus, contrary to the holding of this court in *Steele* and the holding of the United States Supreme Court in *Tyson,* it appears that the law is now settled that a State has a legitimate interest in seeking to control the resale price of tickets to places of entertainment and amusement. The statute we are considering is reasonably related to this objective and consequently does not violate the due process clause of either the State or Federal constitutions. The contrary holding in *Steele* is overruled.

Thus, prior to our decision in this case the law of this State as announced by its highest court was that the legislature lacked authority to control the resale price of amusement tickets. Containing as it does the same features as did the act which this court declared unconstitutional in *Steele,* it would follow that the statute under consideration applying the same principles as those announced in *Steele* would likewise be invalid. We are therefore faced with the question of whether a person should be punished for the violation of a law similar in all pertinent respects to a prior law which the highest court of this State had held invalid and which decision had not been overruled at the time of the alleged offense.

Although we have not discussed this particular ques-

tion, prior decisions of this court have involved similar situations. *In re Luster* (1957), 12 Ill.2d 25, involved disciplinary proceedings against an attorney accused of aiding and abetting the unauthorized practice of law by a layman. Luster had accepted case referrals from a layman who had solicited legal business. As a defense, Luster claimed that he had relied upon a prior unreported decision of this court holding a similar practice valid. Although the court held Luster's actions to be improper, it found that it would be unconscionable to impose a punishment in view of his reliance on the prior decision.

Similarly, in *Bassi v. Langloss* (1961), 22 Ill.2d 190, the court found that it was improper for county judges to engage in the practice of law, but refused to apply the prohibition to judges elected before the decision, who may have relied on earlier decisions finding no impropriety in a county judge practicing law. Prospective operation of the new rule was found appropriate because of the justifiable reliance on prior cases.

There exist in other jurisdictions a number of cases holding that a decision overruling a previous holding of the court concerning the validity or applicability of a penal statute will be applied prospectively only when the overruling decision has made the law less favorable to the defendant than it previously was.

In *State v. Jones* (1940), 44 N.M. 623, 107 P.2d 324, the New Mexico Supreme Court held that a decision finding that "bank night" contests held in local theaters violated the State lottery law should be given only prospective operation because of a prior decision holding that such practices were not illegal. Also in *State v. Stout* (1949), 90 Okla. Crim. 35, 210 P.2d 199, it was held that where a statute penalizing conspiracy to violate the prohibition laws had been held unconstitutional but was later held constitutional in a decision overruling various earlier ones, although the decision was based on other grounds, the court stated that it would have denied retroactive application of the decision if the issue had been

raised. Additional cases reaching the same result are collected in an annotation, Prospective or Retroactive Operation of Overruling Decisions, 10 A.L.R.3d 1371, at 1412 (1966). See also Snyder, Retrospective Operation of Overruling Decisions, 35 Ill. L. Rev. 121 (1940); Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L. Rev. 631 (1967); Cardozo, The Nature of the Judicial Process (1921), at 148-149.

The State contends that the latest judicial pronouncement on the subject under consideration in *Gold* sustains the validity of our statute. Therefore, the defendant's reliance on *Steele* was not justified. However, *Gold* considered the statute of New York which, though it involved the same general subject, was substantially different from the Illinois statute. By contrast the Illinois statute which we now sustain is so nearly identical to the statute which this court previously held invalid that the decision in *Steele* carried considerable if not conclusive weight in judging the present statute, particularly as it is tested by the provisions of the Illinois Constitution. We therefore hold that our decision in this case overruling *Steele* shall be applied prospectively only to offenses committed against the statute after the date of this decision. The complaint against the defendant must therefore be dismissed.

Inasmuch as section 2 of the Act has been amended to provide for any penalty up to $5,000 and in view of the prospective application of our decision, it is unnecessary to consider whether the prior mandatory $5,000 penalty violated article I, section 11 of the 1970 Illinois Constitution and the eighth amendment of the Federal Constitution.

The judgment of the circuit court of Champaign County is affirmed.

*Judgment affirmed.*